

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

RCH
F. #2020R00812

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

May 11, 2023

By ECF

The Honorable Rachel P. Kovner
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Michael Perri
      Criminal Docket No. 21-508 (RPK)

Dear Judge Kovner:

  The government respectfully submits this letter in advance of sentencing in the above-referenced case, scheduled for May 18, 2023, at 2:00 p.m.  The defendant previously pled guilty under 18 U.S.C. § 371 to conspiring to use instrumentalities of interstate commerce to engage in Bribery in the Third Degree and Bribe Receiving in the Third Degree, contrary to New York Penal Laws §§ 200.00 and 200.10, respectively.  For the reasons set forth below, an incarceratory sentence of 33 months is appropriate in this case.

  I. Background

  Prior to June 2020, the defendant Michael Perri was an NYPD officer assigned to the 107th Precinct in Queens, New York, along with co-defendants Giancarlo Osma and James Davneiro.  See Presentence Investigation Report, dated Jan. 30, 2023 ("PSR") ¶ 5.  The defendant retired from the NYPD in June 2020.  See id.  Beginning in at least May 2020, the defendant operated a tow trucking and automobile repair business.  See PSR ¶ 6.  At that time, the defendant recruited Davneiro and Osma to participate in a corrupt scheme whereby, after responding as NYPD officers to automobile accidents, they would steer the removal of the damaged vehicles to Perri's business, rather than administering the NYPD's Directed Accident Response Program ("DARP"), as required, to identify an appropriate licensed tow trucking business to respond to the scene of the automobile accident and remove the damaged vehicles from the scene.  See PSR ¶¶ 4, 6.  In exchange for their participation in this scheme, Osma and Davneiro were paid thousands of dollars in cash bribe payments by the defendant.  See id.  This scheme occurred over approximately one year.  See id.

In total, the defendant corruptly received at least 73 vehicles damaged in automobile accidents from Osma and Davneiro pursuant to this scheme, in exchange for paying them at least $25,000 in bribes.  See PSR ¶ 6.  In addition, the total profit that the defendant's business received from the vehicles diverted to his business by Osma and Davneiro because of this scheme was more than $150,000.  See id.

II.   Sentencing Guidelines Calculation

The government agrees with the Guidelines calculation of the total offense level as calculated in the PSR, set forth below:

| | |
|---|---:|
| Base Offense Level<br>(U.S.S.G. §§ 2X1.1(a), 2C1.1(a)(1)) | 14 |
| Offense Involved More Than One Bribe<br>(U.S.S.G. § 2C1.1(b)(1)) | +2 |
| Value of the Benefit Received Exceeds $150,000<br>(U.S.S.G. §§ 2C1.1(b)(2), 2B1.1(b)(1)(F)) | +10 |
| Crime Involved a Public Official in a Sensitive Position<br>(U.S.S.G. § 2C1.1(b)(3)) | +4 |
| Defendant was Organizer or Leader in Criminal Activity<br>(U.S.S.G. § 3B1.1(c)) | +2 |
| Acceptance of Responsibility<br>(U.S.S.G. §§ 3E1.1(a) and (b)) | -3 |
| Global Resolution<br>(U.S.S.G. § 5K2.0) | -1 |
| Total: | **28** |

Based on a Criminal History Category of I, a total adjusted offense level of 28 results in an effective advisory Guidelines range of 60 to 60 months of imprisonment.  PSR ¶¶ 21-32, 79, 91.

III.   Analysis

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.  As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."  Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted).  Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.  In so

doing, [it] may not presume that the Guidelines range is reasonable. [It] must make an individualized assessment based on the facts presented." Id. at 50 (citation and footnote omitted).

Title 18, United States Code, Section 3553(a) provides that, in imposing sentence, the Court shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct; [and]
>>
>> (C) to protect the public from further crimes of the defendant.

"[I]n determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, [the Court] shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a).

It is well-settled that, at sentencing, "the court is virtually unfettered with respect to the information it may consider." United States v. Alexander, 860 F.2d 508, 513 (2d Cir. 1988). Indeed, Title 18, United States Code, Section 3661 expressly provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." Thus, the Court must first calculate the correct Guidelines range, and then apply the 3553(a) factors to arrive at an appropriate sentence, considering all relevant facts.

IV.     Discussion

The government respectfully submits that the Court should impose an incarceratory sentence of 33 months because such a sentence is appropriate to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Such a sentence will both provide appropriate punishment for the "nature and circumstances of the offense" as well as further the aims of specific and general deterrence. See id. §§ 3553(a)(1), (a)(2)(B) & (a)(2)(C).

A. <u>Nature and Circumstances of the Offense, Respect for the Law and Just Punishment</u>

The nature and circumstances of the defendant's offense are very serious. The defendant, himself a recently retired NYPD officer, orchestrated a scheme in which he would bribe two other NYPD officers with thousands of dollars, thereby inducing those officers to discard their sworn oaths to uphold and enforce the law and instead break it. By corrupting these NYPD officers, he convinced them to disregard NYPD procedures designed to prevent physical harm. Specifically, law enforcement learned from numerous sources during the investigation that absent DARP rules, or when DARP is not followed, tow-truck drivers monitor police radio scanners and race to the scenes of local accidents, resulting in unsafe driving that often results in serious injury. The defendant's criminal scheme prioritized his own financial benefit over public safety.

Moreover, the defendant committed crimes undermining public trust in law enforcement at a time in which the public's confidence in the police is particularly vulnerable. <u>See</u> Aimee Ortiz, "Confidence in Police Is at Record Low, Gallup Survey Finds," Aug. 12, 2020, N.Y. Times, available at https://www.nytimes.com/2020/08/12/us/gallup-poll-police.html. Without trust in the fair, evenhanded and uncorruptible pursuit of justice, the rule of law disintegrates. "The democratic acceptance of . . . effective but proportionate law enforcement [is among] the building blocks of trust and the single most important antidote against the violent expression of dissatisfaction, greed, and lust for power at the expense of other human beings." Ernst M.H. Hirsch Ballin, "Keynote Address," 110 Am. Soc'y Int'l L. Proc. 347, 349 (2016). When the law is administered even-handedly, tow truck drivers and others can proceed in their lives assured that they will be provided their just desserts. When law enforcement authorities trusted with enforcing the rules exhibit corrupt favoritism—here, by steering business to companies that provide kickbacks to the officers—the governed community has no reason to trust the system.

Indeed, while the Probation Department states that "there are no identifiable victims in this offense, as no party incurred a loss as a result of the Tow Truck Scheme," PSR ¶ 9, that is not quite right. Law-abiding tow truck operators who otherwise would have been directed to the scenes of these automobile accidents pursuant to the NYPD's DARP program suffered financial losses when the defendant corruptly induced NYPD officers to circumvent that system to steer damaged vehicles to him for bribe payments. Although it is not possible to identify what particular tow truck operators would have been directed to the scene of each accident pursuant to DARP over the course of the scheme, it would be inaccurate to characterize this crime as a victimless one.

Moreover, the defendant, himself a former NYPD officer, knew that what he was doing was seriously wrong. Over the course of nearly a year, the defendant repeatedly bribed two NYPD officers with thousands of dollars for circumventing NYPD regulations and policies in his favor. Any current or former NYPD officer, sworn to uphold the law, would feel acutely the criminality of the bribe scheme, particularly in light of the arrests in <u>United States v. Busch, et al.</u>, 21 CR 254 (RPK) (E.D.N.Y.), which charged three other NYPD officers with engaging, <u>inter alia</u>, in an identical bribery scheme, all while the defendant was engaged in the aforementioned criminal conduct. And yet, the defendant was not deterred by the arrests of these other NYPD officers for engaging in an identical scheme, despite being aware of those arrests at the time and even

discussing those arrests with his co-defendants. Intercepted communications obtained via Title III wiretap reflect that, even after those arrests, the defendant continued bribing at least one of the NYPD officers, Giancarlo Osma, in exchange for Osma steering vehicles to the defendant's automobile repair shop. Rather than cease his participation in the criminal conspiracy, the defendant discussed the need to move their communications over to encrypted platforms, such as WhatsApp or Telegram. The defendant even characterized his co-defendant James Davneiro, who expressed concern about the arrests in Busch, as "fucking being a bitch" due to Davneiro's hesitancy to continue participating in the scheme.

The defendant persistently engaged in this criminal conduct over a period of nearly a year. He was not dissuaded by the arrests of other NYPD officers for this same crime and instead continued to choose himself, even at the expense of causing sworn law enforcement officers to disobey their oaths. Because this crime was serious and undermines the public's trust in the integrity of the law enforcement community of which the defendant was ostensibly once a proud member, the just punishment for the offense must restore the public's faith in the evenhanded administration of justice and must demonstrate that nobody is above the law. An incarceratory sentence is necessary to restore that faith and demonstrate the impartial enforcement of criminal justice.

B. History and Characteristics of the Defendant

The history and characteristics of the defendant justify an incarceratory sentence. See 18 U.S.C. § 3553(a)(1). The defendant grew up in a stable household with a loving family devoid of any of the unusual hardships. As a former NYPD officer, the defendant was charged with enforcing and upholding the law without fear or favor. However, whatever positive contributions to society the defendant made as an NYPD officer, these do not mitigate that he knowingly perpetrated a year-long crime which targeted the corruption of sworn law enforcement officers and turning them into criminals.

C. Avoiding Unwarranted Disparities

An incarceratory sentence would also help to avoid unwarranted disparities in sentencing. See 18 U.S.C. § 3553(a)(6). Statistics for defendants in Criminal History Category I who are sentenced for violating Section 2C1.1 of the Guidelines and have a Total Offense Level of 28 reflect that the average length of imprisonment imposed is 67 months, with 100% of such defendants sentenced to incarceratory sentences.[1]

With respect to his co-defendants, the defendant was the organizer and leader of this criminal scheme, as reflected in his Guidelines calculation. While Davneiro and Osma, as NYPD officers, were critical and essential members of the criminal scheme who were personally

---

[1] See U.S. Sentencing Commission Judiciary Sentencing Information, available at https://jsin.ussc.gov/analytics/saw.dll?Dashboard (accessed May. 11, 2023).

5

diverting numerous damaged vehicles to the defendant's business in exchange for thousands of dollars in bribes, they both ultimately took direction and payment from this defendant. Also notable is the fact that, following the arrests in Busch, the defendant sought nonetheless to continue participating in the criminal scheme, while expressing dismay that Davneiro intended to cease his participation. This course of conduct suggests that the need for specific deterrence may be greater for the defendant than it was for Davneiro.

With respect to the defendants in Busch, this defendant's role in the criminal scheme was most analogous to that of Robert Smith, who similarly recruited other NYPD officers, including Robert Hassett and Heather Busch, to participate in the corrupt scheme. Hassett, who was sentenced to 18 months of imprisonment, and Busch, who was sentenced to 6 months of imprisonment, were both less culpable than this defendant. Like Smith, this defendant engaged in a lengthy criminal scheme whereby he arranged for multiple NYPD officers to steer numerous damaged vehicles to a tow trucking and automobile repair business in exchange for thousands of dollars in bribes. Unlike this defendant, however, Smith, who this Court sentenced to 97 months of imprisonment, engaged in multiple other criminal schemes, including a second corrupt scheme to sell the names and personal identifying information of automobile accident victims obtained from an NYPD database, and third corrupt scheme to transport heroin for a purported drug trafficking organization while armed with a loaded gun.

D. An Incarceratory Sentence is Appropriate in this Case

Here, for all the reasons described herein, an incarceratory sentence of 33 months of prison would be sufficient, but not greater than necessary to achieve the goals of sentencing, appropriately accounting for the seriousness of the offense, the need for general and specific deterrence, the history and characteristics of this defendant, this defendant's genuine, albeit unsuccessful, attempts to assist the government after arrest, and the need to avoid unwarranted disparities amongst similarly situated defendants.

There are no circumstances in this case that merit departure from the standard practice of imprisoning defendants who commit serious federal offenses, particularly here where those offenses are committed by would-be law enforcement officers and involve a shocking betrayal of public trust. In his sentencing submission, defense counsel highlights the defendant's many friends and family members who are support of the defendant and who would themselves suffer during the defendant's incarceration. See Dkt. No. 59. But the Court regularly encounters criminal defendants who have pled guilty to serious crimes, many of whom have friends or families who would prefer that their loved ones remain at liberty. The answer is not for the government and the courts to stop enforcing the law or punishing offenders, but for the offenders to refrain from committing serious federal crimes. The same is true here. The defendant's love for his friends and family did not stop him from committing the crime, and so it cannot stop the Court from imposing just punishment here, which in this case is an incarceratory sentence.

V.　Conclusion

For the foregoing reasons, the government respectfully requests that the Court impose an incarceratory sentence of 33 months in prison. The government respectfully submits that such a sentence is sufficient, but not greater than necessary to achieve the goals of sentencing.

Respectfully submitted,

BREON PEACE
United States Attorney

By:　/s/
Ryan C. Harris
Assistant U.S. Attorney
718-254-6489

cc:　Clerk of the Court (RPK) (by ECF)
　　James Pascarella, Esq. (Counsel to the defendant) (by ECF and e-mail)
　　Meghan Wing, United States Probation Officer (by e-mail)